# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **EDWARD RHODES** | ) | |
| | ) | |
| | ) | **Case No.** |
| **Plaintiff,** | ) | |
| | ) | |
| V. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **SYSCO ATLANTA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT AND JURY DEMAND

## I.  INTRODUCTION

1.

This is a case to enforce Plaintiff's rights under the Americans with Disabilities Act Amendments Act ("ADA" or "ADAAA"),  42 U.S.C. § 12101, for disability discrimination in failure to accommodate and unlawful termination. It is also a claim for violation of the Family and Medical Leave Act, 29 CFR § 2601 *et seq*.

2.

As an employer covered under the ADA, Defendant has a legal obligation to provide all qualified employees with reasonable accommodations for a disability to allow the employee to perform the essential functions of their position.

## II.  JURISDICTION AND VENUE

3.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (declaratory judgment).

4.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 and O.C.G.A. § 14-3-510(b)(1) because Defendant is a foreign corporation with its registered office in Norcross, Gwinnett County, Georgia, which is in this district and division.

5.

Defendant may be served with process on its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, GA, 30092.

### III.  <u>PRE-LITIGATION REQUIREMENTS</u>

6.

Plaintiff exhausted his administrative requirements prior to initiating this lawsuit, as required by Fed.R.Civ.P. 9(c).

7.

On January 16, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for Disability discrimination and retaliation in violation of the Americans with Disabilities Act.

8.

On February 24, 2022, the EEOC issued a Right to Sue Letter.

9.

Plaintiff filed his claims within  90 days of the date of receiving the Right to Sue letter.

### IV.  <u>PARTIES</u>

10.

Plaintiff is a resident of Fulton County, Atlanta, Georgia.

11.

Defendant is in the business of food service marketing and distribution. Defendant is a Foreign Limited Liability Company conducting business in Gwinnett County, Georgia.

12.

Defendant may be served by way of its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Courners, Gwinnett County, GA 30092.

## V.  STATEMENT OF FACTS

*i.      Background.*

13.

Plaintiff was hired by the Company on November 19, 2019, into the position of Forklift Operator. As a Forklift Operator, he was responsible for receiving products into the warehouse, operating and maintaining equipment, and controlling the flow of products received into the warehouse.

14.

Plaintiff was paid at a rate of $17.75 per hour and he performed his job well.

15.

During Plaintiff's employment, the Human Resource Representative that worked with Mr. Rhodes was Adjoa Banks ("Ms. Banks").

16.

On or about March 27, 2020, Plaintiff's position was impacted by the Covid-19 pandemic, and he (among others) was laid off.

17.

In August 2020 the Company began recalling some of its employees back to work. On or about August 17, 2020 Plaintiff, in the first wave of call backs, was placed into the role of Order Selector and Fork Lift Operator on the night shift.

18.

As an Order Selector and Forklift Operator, Plaintiff was one of 50 to 60 employees responsible for *"operating an electric pallet jack or forklift, selecting the correct products from warehouse racking, labeling product using SOS bale technology, palletizing product as it is selected to build customer orders and delivering product to the deck in a safe and efficient manner."[1]* for approximately 10 hours of work per day.

19.

Plaintiff performed in a diligent and skillful manner and up until his accident, he did not require any specific accommodations to perform his job.

## ii.    *Plaintiff sustains life-changing injuries in a non-work-related accident.*

20.

On August 25, 2020, at approximately 7:30 pm, Plaintiff was involved in a serious motor vehicle accident that rendered him temporarily disabled. Indeed, his vehicle struck a tree traveling at a rate of 30 m.p.h.

21.

On August 26, 2020, at approximately 2:55 pm, Plaintiff reported to the emergency department presenting with low back pain, right wall chest pain, bilateral midline thoracic and lumbar spine pain and paraspinal thoracic and lumbar pain. Plaintiff had been on crutches because he suffered pain in his left flank which radiates to the left hip and down his left leg.

22.

The Plaintiff's injuries were extremely painful and essentially rendered him unable to walk without assistance.

23.

Following eight hours of diagnostic tests, Plaintiff was diagnosed to have suffered acute neck pain, chest wall trauma, and a compression fracture of the lumbar spine at the L1 level.

24.

The Plaintiff was placed in an abdominal brace to stabilize the fracture, and ordered out of work with no heavy lifting for one week.

25.

The Plaintiff was advised to also follow up with Orthopedic & Spine Surgery, and to obtain a lumbar x ray in six to eight weeks.

***iii.   Plaintiff requests a reasonable accommodation under the ADA.***

26.

The Defendant's Company's handbook provides the following with

regarding accommodations for disabilities,

> *"The Company will endeavor to make a reasonable accommodation*
> *for known physical or mental limitations of qualified associates with*
> *disabilities, without regard to any protected classifications, unless the*
> *accommodation would impose an undue hardship on the operation of*
> *our business. Any associate who needs assistance to perform their job*
> *duties because of a physical or mental condition should contact the*
> *Company's Human Resources Business Partner."*

27.

Under information and belief, the defendant delegates some of its

human resources duties including its responsibilities for administering the

Company's medical leaves and reasonable accommodation requests to The

Hartford.

28.

Plaintiff was unable to work due to his injury and asked that the

company provide him with a reasonable accommodation to take time from

work to allow his injuries to heal. To that end on or about August 31, 2020,

Plaintiff's primary medical provider, Dr. Sandra Goldring, ordered that he

remain off work from August 25, 2020, until October 6, 2020 and any further restrictions will come from a neurosurgeon.

29.

Plainitff's request was submitted to the Defendant in accordance with the Defendant's policies and procedures.

30.

In submitting his request for a leave of absence, Plaintiff was asking that the Company provide him with a reasonable accommodation. Through his request, the Company was made aware that Plaintiff suffered from a medical condition that limited major life activities, like walking, standing, and lifting, to name a few.

31.

Likewise, the Company was aware that Plaintiff could not perform the essential functions of his job without a reasonable accommodation, i.e., the leave of absence.

32.

The Company, through The Hartford, notified Plaintiff that his request for the accommodation, i.e., the leave, was approved.

33.

During his leave, Plaintiff continued to convalesce from his injuries, including receiving primary care, orthopedic care and neurology care. Plaintiff also was prescribed medications to manage his pain and inflammation.

34.

When it became apparent that he would need additional time to recover, on September 21, 2020, Plaintiff notified the Company that he needed additional time off. His neurology provider, Dr. Matthew Gery, supported the request with medical documentation submitted to the Company through the same channel he had before.

35.

On September 22, 2020, the Company, through The Hartford, notified Plaintiff that his request for the accommodation was pending while the Company made a decision with regard to his request for additional leave.

36.

On September 24, 2020, Plaintiff submitted medical documentation of Dr. Hassan Monfared, Emory Spine & Orthopedic, for his accommodation for leave. The report, provided that, "***patient is under my care and is unable to do daily work activities due to having a L1 compression fracture. Patient will be out of work for 3 weeks until follow up visit.",*** on or about October 15, 2020.

37.

The extension was approved by the Company until November 1, 2020.

38.

On October 27, 2020, Plaintiff notified Defendant that Dr. Monfared, Emory Orthopedic & Spine, issued his return to work release effective November 25, 2020—**in less than 30 days**.

39.

Also on October 27, 2020, Ms. Banks texted Plaintiff and asked if he would need any restrictions upon his return on November 25.

40.

Plaintiff assured Ms. Banks that he would not need any additional accommodations beyond the medical leave through November 25, 2020, and that when he returned to his position he would do so without restrictions.

41.

Ms. Banks approved Plaintiff's time off and informed him that he would need to be examined by the Company nurse prior to returning to work.

*iv.*    *The Company denies Plaintiff's Request for a reasonable accommodation of a medical leave, after first approving it.*

42.

On or about November 2, 2020, Plaintiff received a letter from The Hartford, on behalf of Defendant Sysco, notifying him that his request for an accommodation vis a vis a 24-day medical leave from November 1, 2020, through November 25, 2020 was denied.

43.

Plaintiff was told in the November 2, 2020 letter from The Hartford that he would need to contact his "HR Business Partner" regarding the specifics of the "accommodations of [his] request." He was also told that once he is ready to return to work, he was to present to his manager and/or HR Business Partner with a Return to Work Fitness for Duty release.

44.

The letter also notified Plaintiff that he may be able to use PTO or vacation time and included a document to make that option.

45.

Finally, the letter informed Plaintiff that the decision would be communicated to the Company and that if he did not return the IPQ within 15

calendar days, the Company would make a decision on his request based on the information available.

46.

Plaintiff was never told that he had to return to work immediately or face termination. He wasn't even told that he had to contact the Company right away.

47.

Defendant did not reach out to Plaintiff any further to discuss his need for an accommodation or to discuss if an alternate accommodation could be made. In fact, Defendant never told Plaintiff the accommodation would cause a hardship or explained *why* the Company could not accommodate him. Defendant has not shown how the accommodation requested by Plaintiff would cause an undue hardship on the defendant.

*v.*    ***Plaintiff is terminated from his position.***

48.

Instead, four days after The Hartford's issuance of the notice of denial of his reasonable accommodation request, and even less time from Plaintiff receiving the notice, the Company sent him an "Employee Attendance Disciplinary Notice" dated November 5, 2020.

49.

Other than the November 5, 2020 Disciplinary Notice, Defendant did not contact Plaintiff to let him know he was going to be terminated if he did not return and no discussion was held about whether an alternative accommodation could be provided.

50.

Instead, the Company arbitrarily denied the short medical leave requested by Plaintiff as an accommodation for his disability.

51.

Moreover, the November 5, 2020 Disciplinary Notice put Plaintiff on notice that he was being terminated due to alleged excessive absenteeism. In support, Defendant listed the following dates of "previous and most current recorded occurrences:"

- November 1, 2020

- November 2, 2020

- November 3, 2020

- November 4, 2020

- November 5, 2020

52.

At least two of the dates listed in the Disciplinary Notice were dates that Plaintiff had not yet received notification that his request for an accommodation was denied. Indeed, The Hartford did not notify Plaintiff that his request for the medical leave was denied until November 2, 2020, yet the Company terminated Plaintiff for absences occurring before he was even aware of the denial.

53.

It would not have placed an undue hardship on Defendant to permit Plaintiff the additional 24 days of leave, as requested. After all, Defendant had yet to recall all of its laid off staff, and several employees were still waiting to be called back to work from the Covid layoff.

54.

The Defendant is a subsidiary of a corporation that has 60,000 employees worldwide and earns approximately $60 billion in annual revenue. The Defendant has the requisite number of employees to subject it to the Americans with Disabilities Act and the Family and Medical Leave Act.

55.

Plaintiff was understandably distressed over the termination, especially given that he only needed 24 days before he could return to work without restrictions. He was also concerned because at the time he was notified of the

denial from The Hartford, he had not heard from the Company, other than the human resources's approval of his leave, her inquiry into whether he would need restrictions upon his leave, and her request that he be examined by the Company nurse prior to returning.

56.

The Defendant, knowing that it would require Plaintiff to provide a medical clearance before returning to work, failed to engage in any discussion, let alone an interactive one, with Plaintiff, as required by the Americans with Disabilities Act.

57.

At the time of his termination, Plaintiff was just two weeks from his one-year anniversary with the Company, and he would have been eligible for certain benefits, including eligibility for FMLA, a pay raise, and 10 days' vacation.

58.

Defendant's actions were willful and in intentional disregard for Plaintiff's rights.

## VI.  <u>LEGAL CLAIMS</u>

### COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### DISABILITY DISCRIMINATION –FAILURE TO ACCOMMODATE

59.

Plaintiff hereby realleges and incorporates the preceding paragraphs as if fully set forth herein.

60.

Congress enacted the ADA (and ADAAA as amended) after recognizing that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society." Congress also recognized that many individuals with disabilities face discrimination in the workplace and saw a critical need to provide protection for those needing it.

61.

The ADA provides that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring . . . or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

62.

An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations for the disability, unless doing so would impose undue hardship on the employer."[2]

63.

A qualified individual with a disability under the ADA is defined as a person with a "physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A).

64.

Plaintiff's fractured vertebrae qualified as a "disability", as defined under the ADA. Indeed, his condition was extremely painful and impacted his ability to walk, sit for prolonged periods of time and his ability to work without a reasonable accommodation.

65.

The ADA requires that employers engage in an interactive process with an employee making a request for an accommodation to ascertain whether a reasonable accommodation can be provided. 29 C.F.R. § 1630.2(o)(3).

66.

On or about August 31, 2020, Plaintiff notified Defendant of his disability and made a request for a reasonable accommodation. Defendant ultimately granted his request until November 1, 2020.

67.

On October 27, 2020, Plaintiff requested a short extension of his accommodation, and requested to remain off work 24 additional days beyond his then-existing accommodation. His doctor provided medical support demonstrating that the additional 24 days of leave was a reasonable accommodation for his disability and would allow him to return to work after November 25, 2020 without any further restrictions.

68.

The request for an accommodation was reasonable and could have been made without an undue hardship to Defendant.

69.

Despite the reasonable request, Defendant denied Plaintiff's request for the accommodation and denied the additional 24 days of medical leave.

70.

The accommodation requested by Plaintiff would not have placed an undue hardship on Defendant or its operational needs.

71.

Defendant failed to engage in any interactive discussion with Plaintiff regarding his request. Indeed, at no time was Plaintiff told by the Company that his accommodation would not be granted. Instead, The Hartford communicated the decision to Plaintiff.

72.

Defendant is an employer and Plaintiff is an employee as those terms are defined under the ADA.

73.

Defendant's actions were intentional and willful.

74.

The effect of the practices complained of in Paragraphs 59-73 above, has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

75.

As a result of Defendant's unlawful actions as described in this Complaint, Plaintiff has sustained  (and continues to sustain) damages, including lost wages, emotional distress, and attorney fees.

## COUNT II

## VIOLATION OF THE AMERICANS WITH DISABILTIIES ACT
## DISABILITY DISCRIMINATION—UNLAWFUL TERMINATION

76.

Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

77.

The ADA provides that no covered entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring . . . or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

78.

A qualified individual with a disability under the ADA is defined as a person with a "physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A).

79.

Plaintiff's fractured vertebrae qualified as a "disability", as defined under the ADA.

80.

Defendant's decision to terminate Plaintiff because of his disability is a violation of the ADA.

81.

Had Plaintiff not been disabled, he would not have been terminated from his position.

82.

Defendant's actions were willful and intentional.

83.

The effect of the practices complained of in Paragraphs 76-82 above, has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

84.

As a result of Defendant's unlawful actions as described in this Complaint, Plaintiff has sustained (and continues to sustain) damages, including lost wages, emotional distress, and attorney fees.

## COUNT III

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT UNLAWFUL RETALIATION

### 85.

Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

### 86.

The ADA prohibits an employer from retaliating against an employee for asserting his rights under the ADA. 42 U.S.C. § 12132.

### 87.

An employee participates in a protected activity under the ADA when he makes a request for a reasonable accommodation.[3]

### 88.

Defendant terminated Plaintiff because of his request for the accommodation, in violation of the ADA.

### 89.

Defendant's actions in terminating Plaintiff for asserting his rights under the ADA is a violation of the ADA.

90.

Plaintiff has sustained damages as a result of Defendant's actions described herein.

## COUNT IV

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## UNLAWFUL TERMINATION

91.

Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

92.

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right. 29 CFR § 2601 *et seq*.

93.

Defendant violated the FMLA by terminating Plaintiff to avoid providing him with benefits afforded to him under the FMLA.

94.

Defendant is an "employer" and Plaintiff is an "employee", as those terms are defined by the FMLA.

95.

The termination was in interference of Plaintiff's rights under the FMLA.

96.

Defendant's actions were intentional and willful.

97.

As a result of Defendant's actions, Plaintiff has sustained damages in the form of lost wages, lost benefits and attorney fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Sysco Atlanta, LLC, its officers, agents, servants, employees, attorneys, and all persons in active concern or participation with it, from denying reasonable accommodations for disabilities to employees.

B.      Grant a permanent injunction enjoining Defendant Sysco Atlanta, LLC, its officers, agents, servants, employees, attorneys, and all persons in active concern or participation with it, from dismissing employees from employment because of their disabilities.

C.      Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals with disabilities,

and which eradicate the effects of its past and present unlawful employment practices.

D.        Order Defendant to provide an annual training program regarding the anti-discrimination policy to all of its owners, managers, supervisors and employees.

E.        Grant a judgment requiring Defendant to pay appropriate lost wages and benefits, to be determined at trial.

F.        Grant a judgment requiring Defendant to pay compensatory and punitive damages to Plaintiff in an amount to compensate him for the egregious violations inflicted upon him.

G.        Order Defendant to make Plaintiff whole by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to providing Plaintiff with front pay to Plaintiff.

H.        Grant such further relief as the Court deems necessary and proper in the public interest.

I.        Award Plaintiff the cost of this action, including reasonable attorney fees.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial in this matter.

Respectfully submitted,

 s/Benjamin F. Barrett Jr.
Benjamin F. Barrett Jr.
Georgia Bar No. 039586

Ben Barrett Law
1050 Crown Pointe Pkwy., Suite 500
Atlanta, GA 30338
Phone: 404-845-7449
Ben@BenBarrettLaw.com

*Attorney for Edward Rhodes*

---

[1] Quoted directly from the Company's Job Description for the position of Order Selector.
[2] See for example, *W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).
[3] *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).